4 Wh 410
31 SC ² 81
4 Wh 410
f 33 SC ² 9

[PHILADELPHIA, APRIL 13TH, 1839.]

## HELMBOLD *against* MAN.

### IN ERROR.

1. A. who was the holder of a mortgage upon a tract of land, upon which there was a mortgage of a subsequent date, to B., purchased the mortgaged premises, and shortly afterwards conveyed them to C. by deed, in which the mortgages were not mentioned. B. brought suit on her mortgage, obtained a judgment, and bought the premises at the sheriff's sale, under a *levari facias* issued thereon. In the conditions of sale, it was stated, that she took the property subject to whatever might be due on the mortgage to A., if that mortgage was not extinguished. Afterwards A. issued an execution on a judgment obtained on his mortgage, and the Court directed a feigned issue to ascertain if his mortgage continued to bind the land. *Held*, (1st,) That parol evidence was admissible to prove, that the value of the land was much greater than the price given for it by B. at the sheriff's sale; (2nd,) That parol evidence was admissible of declarations by A. to the agent of C. before the time of making the deed to C., that his mortgage was to continue a lien upon the land, and was in fact part of the purchase-money. (3rd,) That under the circumstances of the case, the purchase by A. of the land, and his conveyance to C. did not extinguish his mortgage or estop him from claiming under it.

2. The lien of a mortgage is not merged in a judgment on a *scire facias* on such mortgage; and therefore such lien is not affected by the expiration of five years from the date of the judgment, without a revival of the judgment under the acts of assembly relating to the liens of judgments.

THIS was a writ of error to the Court of Common Pleas of Montgomery County, to remove the record of the proceedings on a feigned issue, directed by that Court, wherein Daniel Man was the plaintiff and Elizabeth Helmbold the defendant.

The facts upon which the controversy arose, were mainly as follows:

On the 1st of April, 1811, George Helmbold, the owner of a messuage and tract of land in Montgomery County, mortgaged the same to Paul Jones, to secure the payment of $3000. On the next day George Helmbold mortgaged the same premises to Elizabeth Helmbold, to secure the payment of a debt due to her. On the 16th of October, 1818, George Helmbold assigned all his estate, including the mortgaged premises, to Thomas Gilpin, in trust for the benefit of creditors. Paul Jones issued a *scire facias* on his mortgage, and obtained a judgment on the 19th of July, 1819. A *levari facias*

issued to November Term, 1819, which was returned *tarde venit.* On the 16th of February, 1820, Paul Jones assigned his mortgage to Daniel Man, the plaintiff, and on the 30th of August, 1823, Thomas Gilpin conveyed the mortgaged premises to him in fee. On the 18th of November, 1823, Daniel Man conveyed the premises to Margaret Helmbold in fee, by indenture of that date, with the usual covenant of special warranty. The consideration expressed in the deed, was $13,000. Elizabeth Helmbold issued a *scire facias* upon her mortgage, to November Term, 1828; judgment was obtained, and a *levari facias,* issued to January Term, 1830, under which the premises were sold to Elizabeth Helmbold, for $2600. No money was in fact paid by her but the costs.

An alias *levari facias* was issued by Paul Jones, executor of the will of Paul Jones, deceased, to the use of Daniel Man, against George Helmbold, and the terre tenants, to August Term, 1836, under which a sale was made by the sheriff of the premises. The Court granted a rule to show cause why this writ, and the sheriff's sale, should not be set aside, and directed a feigned issue to be made up and tried between Daniel Man, as plaintiff, and Elizabeth Helmbold as defendant, for the purpose of ascertaining whether the premises were bound by the judgment and mortgage, and liable for the payment of the debt, or otherwise; proceedings to be staid until the trial.

The issue so directed by the Court, came on for trial, before Fox, President, on the 29th of November, 1838, when the plaintiff gave in evidence the mortgage by George Helmbold to Paul Jones, with the assignment by Jones to the plaintiff, the record of the judgment upon the mortgage and the executions issued thereupon, and the record of the judgment obtained by Elizabeth Helmbold against George Helmbold, together with the *levari facias* issued thereupon, the sheriff's return, and his deed to her. The conditions of this sale were then given in evidence as follows:

" The conditions of this present vendue, held this 14th day of January, A. D. 1830, for the sale of a messuage, paper mill and nineteen acres and sixty-six perches of land, more or less, with the appurtenances, situate in the township of Lower Merion, in the county of Montgomery, adjoining lands of Silas Jones, Paul Jones, Jacob Sloan and others, seized and taken in execution as the property of George Helmbold, are as follows, to wit; the highest bidder and best shall be the buyer: the purchaser is to pay the sum of forty dollars as soon as the premises are struck off to him by the crier: and the remainder of the purchase-money is to be paid on the twentieth day of January instant, upon the payment of which a sheriff's deed, for conveying said premises, will be delivered to the purchaser at his expense. If the purchaser neglects or refuses to

(Helmbold *v.* Man.)

comply with the foregoing conditions of sale, the property will be resold at his risk, by

JONES DAVIS, *Sheriff.*

The purchaser takes the property subject to whatever may be due on a mortgage which appears upon record from George Helmbold to Paul Jones, dated the first day of April, 1811, and by Paul Jones assigned to Daniel Man, by assignment, bearing date February 16th, 1820, and recorded in the recorder's office at Norristown; said mortgage being for the principal sum of three thousand dollars.

This mortgage is believed to be no longer a lien upon the property, but in law to be entirely discharged and extinguished. The purchaser however takes subject to whatever claim may be made under said mortgage."

"I, Joseph K. Helmbold, do hereby confess and acknowledge that the messuage, paper mill and nineteen acres and sixty-six perches of land, abovementioned, were struck off to me at my bid, for the sum of twenty-six hundred dollars, which sum I bind and obligate myself, my heirs, executors and administrators, to pay to Jones Davis, sheriff, according to the foregoing conditions of sale. Witness my hand and seal, this fourteenth day of January, A. D. 1830.

Witness present,          Jos. K. HELMBOLD. [ L. S. ]
James M. Broom.

The within purchase having been made by me at the request of Elizabeth Helmbold, the sheriff will be pleased to execute the deed to her. January 20th, 1830.

Jos. K. HELMBOLD."

The plaintiff's counsel then proposed to prove by a witness, the value of the property mortgaged. This was objected to by the defendant's counsel, but the objection was overruled, and the testimony admitted; to which the defendant's counsel excepted. The witness testified in substance, that at the time of the sheriff's sale, in 1830, he considered the premises worth between six and seven thousand dollars.

The defendant's counsel then gave in evidence the assignment by George Helmbold to Thomas Gilpin, the deed from Gilpin to Daniel Man, and the deed from Man to Margaret Helmbold.

The plaintiff's counsel then offered in evidence, a mortgage given by Margaret Helmbold to Daniel Man, dated the 18th of November, 1823, for securing payment of thirteen bonds bearing even date therewith. This evidence was objected to on the part of the defendant, but admitted by the Court, to show the estate which Man granted to Margaret Helmbold; and exception was taken by the defendant's counsel. The plaintiff's counsel then called George Helmbold, and offered to prove by him, that the plaintiff declared at the

time, and before he made the deed to Margaret Helmbold, that he did not intend to lose the lien of his mortgage by the conveyance to her. This was also objected to, but admitted and excepted to. The witness testified that he transacted the business for Margaret Helmbold, and that he had a conversation with the plaintiff during the negotiation, and before the making of the deed. He was then asked what passed between him and the plaintiff. The defendant's counsel objected to the statement of what passed at such conversation, but the objection was overruled. The witness then testified that the plaintiff said he would not make a deed to Margaret Helmbold, unless his mortgage was made safe; and requested the witness to call upon his counsel and get his advice. The witness called upon the counsel, and was advised by him, that the deed would not in any way affect the mortgage. The witness also stated conversations between the plaintiff and his counsel to the same effect; all of which were objected to on the part of the defendant, but admitted by the Court. On his cross-examination, the witness said—

"Margaret Helmbold was to pay thirteen thousand dollars for the property. I can't tell who was to pay the mortgage to Paul Jones. I did not understand that Margaret Helmbold was to pay the Paul Jones mortgage in addition to the thirteen thousand dollars. It was understood all she was to pay was the thirteen thousand dollars. I had no written power of attorney to act for her. I have no recollection of the fact of telling her of that conversation at the office of the counsel, and with Man about the mortgage. I can't say how the Paul Jones mortgage was to be paid. I have no recollection of being present when the deed was executed. I don't recollect of being present when the deed was delivered. I never saw the deed and bonds and mortgage to examine them from that day to this." The witness being re-examined again by the plaintiff's counsel, said; "I recollect telling Margaret Helmbold that Captain Man would not execute a deed until the mortgage was safe. She, Margaret, made no objection: she agreed of course. That was before the execution of the deed." ·

The witness also stated, that no part of the bonds had been paid; and being again cross-examined, he said:

"I don't recollect informing her that if she took the deed for the thirteen thousand dollars, she must pay this mortgage too. I told her the mortgage would be a lien on the property. I did not tell her that she must pay the mortgage and the thirteen thousand. By the contract made by me as her agent, with Captain Man, she was only to pay thirteen thousand dollars for the property."

The Court (after stating the facts) charged the jury as follows:

"The conditions of the sale to Elizabeth Helmbold were, that the

(Helmbold *v.* Man.)

land should be subject to the lien of whatever sum, if any, might be due, owing or payable upon the mortgage in question in this issue.

The first question that arises in this case is, what was the effect of these conditions of sale upon the land in the hands of Elizabeth Helmbold? She agrees by signing these conditions, to take the land subject to the lien of the mortgage if it existed at the time of the sale.

Then did the lien of the mortgage exist at the time of the sale?

It is contended by the defendant that the mortgage was merged by the conveyance of the fee from Gilpin to the plaintiff.

That conveyance did not operate as a merger of the mortgage—

1. Because there was an intermediate interest in the land existing at the time in Elizabeth Helmbold; and

2. Because it was necessary for the lien to continue to protect Man's estate from Helmbold's mortgage.

It is also contended by the defendant, that the mortgage in question was extinguished by the deed from Daniel Man to Margaret Helmbold. But if the witness, George Helmbold, is believed, she took the land, expressly agreeing that the mortgage was not to be affected by the conveyance.

It is also contended by the defendant, that the judgment upon the *scire facias* on the mortgage merged the mortgage, and that the judgment on the mortgage not being revived from 1819 to 1836, its lien is gone, and the land discharged from the lien both of the judgment and mortgage.

This is not correct. The judgment did not create the lien. The mortgage was a specific lien and the judgment upon the *scire facias* was but the pursuit of one remedy prescribed to obtain satisfaction. There is no necessity to obtain a judgment, or to revive a judgment upon a *scire facias* upon a mortgage, for the purpose of creating or continuing the lien."

The jury found for the plaintiff, and the defendant took this writ of error, and assigned for error the admission of the testimony excepted to, and the charge of the Court on the law.

Mr. *Potts* and Mr. *Mallery* for the plaintiff in error.

The testimony admitted under the first and second bills of exceptions, was irrelevant. It tended to prove no part of the issue. The third, fourth, fifth and sixth exceptions embrace the different parts of the testimony of George Helmbold, who was admitted to testify to the declarations of Daniel Man, and his counsel, not at the time the deed and mortgage were executed, but some time before; and by force of which declarations, the writings are altered, and a different contract set up between the parties, and submitted by the Court to the jury, and that too, where there is neither fraud, trust, nor mistake alleged. *Cozens v. Stevenson,* (5 *Serg. & Rawle,* 421.)

*Bertsch* v. *The Lehigh Canal & Navigation Co.* (4 *Rawle*, 130.)
The evidence in this case, falls within no exception to the rule exclu-
ding parol evidence to vary a written contract; and Man, who
is a party to the deed, is bound by it, and cannot set up a parol
contract different from his deed: and the statement by the witness
of what the counsel of Man said to him, was hearsay evidence.

Daniel Man, while he was the holder of the mortgage, pur-
chased the equity of redemption, and thereby his mortgage became
extinguished. He could not be at the same time both debtor and
creditor; his right of action was suspended and gone. *Thomas* v.
*Thompson*, (2 *Johns. Rep.* 473.) The mortgage was merged. *Gard-
ner* v. *Astor*, (3 *John. Chan. Rep.* 53.) *Starr* v. *Ellis*, (6 *John. Chan.
Rep.* 393.) *James* v. *Johnson*, (6 *John. Chan. Rep.* 417.) And it
has been decided, that if the plaintiff in a judgment, become the
owner of the land, upon which that judgment is a lien, the lien
thereby becomes extinct by operation of law. *Koons* v. *Hartman*,
(7 *Watts*, 20.) There can be no difference between the case of the
holder of a judgment, and of a mortgage. Each one is only a secu-
rity for the payment of money. The mortgage of Elizabeth Helm-
bold was not an estate in the land; it was only a security for the
payment of money, and that could not prevent a merger upon the
union of the interest of the mortgagee and equity of redemption in
Daniel Man. *Judson* v. *Wass*, (11 *John. Rep.* 524.) *Brinkerhoff* v.
*Marvin*, (5 *John. Chan. Rep.* 320.) *Reckert* v. *Madeira*, (1 *Rawle*,
325.) *Corporation* v. *Wallace*, (3 *Rawle*, 109.) The intention of
Daniel Man to prevent a merger, must have been manifested at the
time he purchased the equity of redemption. That might have been
done in various ways; the deed might have been taken to another
person. Without such intention expressed at that time, the mort-
gage became extinguished. There was no reason operating in this
case in favour of personal representatives and against the heir, to
prevent a merger, as in the case of *Forbes* v. *Moffat*, (18 *Ves.* 384.)

The deed from Daniel Man to Margaret Helmbold, of all his
interest, &c. both in law and equity, with a covenant of warranty
against himself and all claiming under him, divested him of all
interest in the mortgage, and he cannot recover. No language can
be more full, and more entirely divest Daniel Man of all interest in
the premises, than that used in the deed. And this deed is conclu-
sive against the right of Daniel Man, unless the deed and all its
provisions are to be destroyed by the loose conversations of the
parties not had at the time the deed was executed. In *Henry* v.
*Sims*, (1 *Wharton's Rep.* 187,) it is decided that a judgment on a
*scire facias* on a mortgage is a judgment within the fourteenth sec-
tion of the act of 13th April, 1791, imposing a penalty for not enter-
ing satisfaction on judgments. If a judgment on a *scire facias*, is
regarded as a judgment under that act, it is clearly embraced under
the provisions of the acts of 26th March, 1827, and 23rd of March,

1829, requiring *all* judgments to be revived within the times stated in the act; and the judgment upon the mortgage of Daniel Man, not having been so revived, the lien is gone.

Mr. *Freedley*, (with whom was Mr. *Wheeler*,) for ,the defendant in error.

Daniel Man bought the mortgage, executed by George Helmbold to Paul Jones, and the judgment entered upon the *scire facias* sued out upon it, by paying every cent of the debt, interest and costs; for mortgage and judgment were regarded as perfectly good. The assignment of the mortgage was immediately recorded; that of the judgment, was made on the docket of the Court. Man, subsequently, for the consideration of two thousand dollars, purchased the equity of redemption from Thomas Gilpin, the assignee of George Helm-. bold, and took from Gilpin the transfer of it, by deed of bargain and sale. This was an equity upon an equity, an equity in the second degree. The mortgage of Paul Jones, then Daniel Man's mortgage, was the first mortgage; having been given the 1st of April, 1811. The mortgage of Elizabeth Helmbold, was a second mortgage, having been given as such, and received as such; it was dated, executed and· delivered the day following, viz. on 2nd of April, 1811. Now the pretension of Elizabeth Helmbold is, that Daniel Man, by paying two thousand dollars additional, has succeeded to the loss of the whole, viz. three thousand, plus two thousand dollars, besides interest; and that by some technical magic, her mortgage is made, both in law and equity—for that is the pretension—the first and sole incumbrance. It is the law, *Warder* v. *Tainter*, (4 *Watts*, 286,) that Man, as assignee of the mortgage, and the money on it, being due and unpaid, had a right to take the possession of the land, and having obtained it peaceably, either with or without the assent of the mortgagor or his assigns, had an undoubted right to hold it, until he was satisfied of the mortgage debt. This was his right, and it is proper that it should be so. The notion of our adversaries here, is, that Man by an unfortunate effort, unfortunate for himself, viz. by taking a deed in order to obtain possession peaceably, extinguished his mortgage.

Did the mortgage ·held by Man, merge by his taking a conveyance of the equity of redemption? There can be no merger where there is an intervening estate. 2 *Bl. Com.* 177. 3 *Pres. on Con.* 107-9. A merger .is not favoured in equity, and is never allowed against the intention of the· party. *Dougherty* v. *Jack*, (5 *Watts*, 458.) It is only in those cases when it is perfectly indifferent to the party, in whom the interests had united, whether the charge or term should subsist or not, that in equity it will be merged. In the present case it was for the interest of Man, that his mortgage should subsist on his own estate, otherwise the second incumbrance would obtain a priority. The sale under the mortgage of Elizabeth Helm--

. (Helmbold v. Man.)

bold, destroyed the conveyance by G. Helmbold to Gilpin, and all subsequent conveyances founded thereon, together with the securities given for purchase-money, shall it also destroy the mortgage of D. Man, which was a prior lien? This would be against equity. "A person becoming entitled to an estate subject to a charge for his own benefit, may, if he chooses, at once take the estate and keep up the charge." It is more beneficial for the person entitled to the charge, to let the estate stand with the incumbrances upon it, than to take it discharged from the incumbrance and give a priority to the second incumbrancer. *Forbes* v. *Moffat*, (18 *Ves.* 394.) Where the two estates unite in the same person, without any intervening estate or incumbrance, so that it is immaterial to the party whether the lesser estate merges or not, there equity holds that the lesser estate is merged in the greater, unless the party at the time manifests an intention to hold the estates separate; but where it is for the *interest of the party* that the two estates should be kept separate, as in this case, there will be no merger, unless the party declare unequivocally that he does not intend to keep alive the charge. *Forbes* v. *Moffat*, (18 *Ves.* 394.) *Starr* v. *Ellis*, (6 *Johns. C. R.* 393.) *Gardner* v. *Astor*, (3 *Johns. C. R.* 53.) 3 *Pres. on Con.* 557-8. A mortgage will not merge by a purchase of the equity of redemption, where there is an intervening incumbrance. The mortgage being the legal, may be considered the greater estate, and by purchase of the equity of redemption, the title may be considered complete under the mortgage. 2 *Mason Rep.* 531.

If then the mortgage of D. Man, did not merge when he took a conveyance from Gilpin, did his transfer of the fee to Margaret Helmbold cause it to merge? The consideration of that conveyance was thirteen thousand dollars, for which he took a mortgage on the premises, no part of the purchase-money being paid. So far as the original mortgage assigned by Jones to Man, is concerned, the plaintiff below then held two securities for the same money. This a man may lawfully do. If Margaret Helmbold had paid the consideration money, then both mortgages would have been satisfied. As she never paid, and as the deed to her, together with the mortgage given by her, were cut out by the sale under the mortgage of E. Helmbold, the prior mortgage of D. Man is good for the amount secured by it, on the principle, that "an estoppel determines by cesser of the act, deed, &c., which made the estoppel." *Co. Litt.* 47, b. *Com. Dig.* 208.

As to the exceptions to the parol evidence, we contend that it was not to contradict but to strengthen the presumption of law; and if our view of the case be correct, the parol testimony was totally immaterial.

The Court declined hearing Mr. *Wheeler.*

The opinion of the Court was delivered by

KENNEDY, J.—George Helmbold being the owner in fee of a tract or parcel of land, situate in Montgomery County, on the first day of April, A. D. 1811, mortgaged the same to Paul Jones, in fee, to secure the payment of a debt of three thousand dollars, owing by him to Jones; and on the following day mortgaged the same land again to Elizabeth Helmbold, the plaintiff in error, who was the defendant below, in like manner to secure the payment of a debt owing to her. The debt owing to Paul Jones, not being paid, he sued a *scire facias* upon his mortgage, out of the Common Pleas of Montgomery County, to May term, 1819, in which he obtained judgment, the nineteenth day of July, in the same year; awarding execution in his favour for the amount of his debt against the land. Accordingly a writ of *levari facias* was issued thereon, returnable to the following November term, which was returned by the sheriff *tarde venit*. No further proceeding being had therein, Paul Jones, on the 16th of February, 1820, assigned his mortgage and the judgment had thereon, to Daniel Man, the defendant in error, and plaintiff below; who, subsequently, on the 30th of August, 1823, became the purchaser of the equity of redemption in the land, from Thomas Gilpin, who had acquired it by an assignment from George Helmbold and his wife, made to him on the 16th of October, 1818, in trust for the benefit of the creditors of the said George. On the 18th of November, 1823, Daniel Man (having then, as stated above, become the owner of the mortgage to Paul Jones, and the equity of redemption, which remained in George Helmbold, after giving the two mortgages, the second to the plaintiff in error, still remaining unpaid and in full force,) sold, and by his deed conveyed the land, embraced by the mortgages, in fee, with covenant of special warranty to Margaret Helmbold, for the consideration of thirteen thousand dollars, therein mentioned; which was secured to be paid by mortgage upon the land and thirteen bonds, making the amount payable by annual instalments of one thousand dollars each, all bearing date the same day. In connection with the deed conveying the land by Man to Margaret Helmbold, the parol evidence of George Helmbold, was given on the part of the plaintiff below. George Helmbold testified that he, as the agent of Margaret Helmbold, made the agreement on her behalf, for the purchase of the land; that Man refused to sell unless the mortgage assigned to him by Jones, were permitted to remain a lien upon the land; that the advice of a professional gentleman was taken, in order to know what the effect of Man's selling and conveying the land in fee to Margaret Helmbold, would be upon his mortgage—whether it would extinguish or discharge the lien of it from the land; that they were advised, it would not destroy or affect it in any way; that it would notwithstanding still continue to bind the land; that thereupon the contract for the purchase was

concluded; and for the purpose of having it carried into execution, the same professional gentleman was employed to draw the deed of conveyance, transferring the land, as also the mortgage and bonds, for securing the payment of the purchase money; and that he accordingly did so.     That the three thousand dollars in the Jones mortgage were included in the thirteen thousand dollars, as forming part of the consideration to be paid by Margaret Helmbold to Daniel Man for the land.     That Margaret Helmbold was informed by the witness, that Man would not sell the land to her unless the mortgage assigned to him by Jones, were permitted to remain a lien upon it; and if she took the land she would have to take it subject to such lien.     To this she made no objection; nor did she ever pay any part of the mortgage or consideration money for the land.

After this, under a judicial proceeding had upon the mortgage of the plaintiff in error, the land was sold, in January, 1830, by the sheriff to her, for the sum of twenty-six hundred dollars, subject, however, to whatever the land might be then bound for, by the mortgage given to Paul Jones.     Parol evidence was also given by the plaintiff below, showing that the land, at the time of this sale to the defendant below, was worth between six and seven thousand dollars.     The conditions of the sheriff's sale were also given in evidence, and the agreement of the purchaser, to take the land under it, subject to the Jones mortgage, in case it should be a lien thereon, and to whatever sum of money might be due upon it.     The defendant below, by her counsel, objected to the parol evidence on the part of the plaintiff there being received; and after it was ruled admissible by the Court, excepted to the opinion of the Court in this respect, as also the charge of the Court delivered to the jury.

The questions raised by the errors assigned, are, 1st, Was the parol evidence, and the mortgage and bonds, which were also read in evidence, after being objected to, from Margaret Helmbold to the defendant in error, admissible?     2nd, Did the deed of conveyance from Thomas Gilpin to Daniel Man, under the particular circumstances attending the case, merge or extinguish the mortgage, which the latter held at that time, by assignment from Paul Jones? 3rd, Did the deed of conveyance from Daniel Man to Margaret Helmbold, discharge the lien of said mortgage upon the land; or show that he did not intend to keep it on foot when he became the owner of the land, or estop him from claiming under it?     And 4th, Supposing the Court below to have answered these three questions correctly, by responding to the first in the affirmative, and the two last in the negative, did the lien of the mortgage expire, because it was not revived by *scire facias*, within five years from July term, 1819, when the judgment was first obtained upon it, authorising the issuing of a writ of *levari facias*, to sell the land for the purpose of obtaining the mortgage debt?

As to the first question, the parol evidence first objected to, was

offered for the purpose of showing that the value of the land, at the time it was sold by the sheriff to the plaintiff in error, by virtue of a writ of *levari facias,* sued out by her upon a judgment, which she had obtained in a *scire facias* upon her mortgage from George Helmbold, was worth the amount of the debts mentioned in both mortgages given by him. This evidence cannot well be considered altogether irrelevant, as has been contended by the plaintiff in error, nor yet going to vary, contradict or alter any written evidence on the subject concluding the parties. It was perfectly consistent with the conditions of the sheriff's sale of the land, and with the deed of conveyance made in pursuance thereof. By them it appears that the plaintiff in error expressly agreed to take the land at the price bidden for it by her agent, subject to the payment of whatever might be due upon the Jones mortgage, if it were then a lien upon the land; and as the parol evidence tended to prove that the land was equal in value to the amount of the moneys claimed on both mortgages, it went not only to corroborate and sustain the agreement made by the plaintiff in error, for the purchase of the land, but also to affect her conscience, and to show that she ought not, either in law or equity, to be permitted to hold the land discharged from the payment of the money due on the Jones mortgage, if it were a lien upon the land at the time she bought.

The next parol evidence received, that was objected to by the plaintiff in error, was the testimony of George Helmbold. According to it, he as the agent for Margaret Helmbold, contracted with Daniel Man for the purchase of the land; that Daniel Man refused to sell, when in treaty for the sale, unless the Jones mortgage were secured, or permitted to remain a lien upon the land. That advice was taken of a professional gentleman, to know whether Man's selling and conveying the land to Margaret Helmbold, would have the effect of discharging the lien of that mortgage, who said it would not; and upon this the agreement for the purchase was concluded; and the same professional gentleman was employed to draw the deed of conveyance transferring the land; and the mortgage and bonds securing the payment of the purchase-money, which he accordingly did. They were all executed afterwards, when the witness was not present. But Margaret Helmbold was fully apprised before this execution, that the Jones mortgage was to remain a lien upon the land, until the purchase-money should be paid by her to Man, which would have satisfied it too, as it was understood to be included in the thirteen thousand dollars, the amount of the consideration money agreed to be paid by her. It is contended that this evidence ought not to have been received, because it was inconsistent with the import and effect of the deed of conveyance from Man to Margaret Helmbold. But certainly it is not more so than the deed of a grantor, who to secure the repayment of money borrowed by him, conveys his land by deed absolutely in fee, sub-

(Helmbold v. Man.)

ject, however, to a parol agreement, that he shall retain in himself the equity of redemption. This he may do according to the decision of this Court in *Kunkle* v. *Wolfersberger*, (6 *Watts*, 126.) Here the grantor conveyed the land subject to the right, which he claimed to have, of using his mortgage thereafter, if it should become necessary in order to protect him against the claim of the plaintiff in error, under her mortgage. Or if this view of the matter should seem to be repugnant to the analogy of the law in any respect, Daniel Man, in order to give effect to the agreement and intention of the parties, may be considered as having conveyed his right to the Jones mortgage, and the equity of redemption to Margaret Helmbold, to hold them in the same manner as he held them himself, and she, by the execution of the mortgage to him, as having reconveyed the right to the Jones mortgage, so that the right to this mortgage, and the lien of it should still continue to exist and be used by him, whenever it might be for his advantage to do so. Under this view, the objection that the parol evidence admitted, had a tendency to change or alter the import and legal effect of the deed of conveyance from Man to Margaret Helmbold, is completely removed; and the mutual deeds executed by the parties respectively, forming constituent parts of one and the same arrangement between them, may be regarded as sufficient in law as well as in equity, to have this operation and effect, without uniting the two interests, so as to merge the one in the other, and render them forever thereafter inseperable for any purpose whatever, contrary to the agreement of the parties. The rule of law in this respect, comports with equity and the plain principles of common sense, that all instruments of writing shall be so construed, if susceptible of it, as best to effectuate the intention of the parties, and not to overturn or defeat it.

The second question presents itself next; did the deed of conveyance, from Thomas Gilpin to Daniel Man, under the particular circumstances attending the case, merge or extinguish the mortgage, which the latter held at that time, by assignment from Paul Jones? There have doubtless been cases where a merger has been held to take place against the intention of the parties; as where a lease for years, and a remainder for life, were limited to the same person by the same deed, it was determined that the estate for years, should merge in the estate for life. 1 *Inst.* 54, b. *Uthen* v. *Godfrey*, in note to Dyer, 309, b. *Clark* v. *Sir John Sydenham*, (*Yelv.* 85.) *Preston on Merger*, 44. Although it would seem from these authorities, that the intention does not always determine whether there shall be or has been a merger or not; and that it may take place in some instances without any regard, or even in opposition to the intention, yet as Sir William GRANT, Master of the Rolls, says, in *Forbes* v. *Moffat*, (13 *Ves.* 390,) "it is very clear, that a person becoming entitled to an estate, subject to a charge for his own benefit, may, if he chooses, at once take the estate, and keep up the charge.

(Helmbold *v.* Man.)

The question there is upon the intention, actual or presumed, of the person in whom the interests are united;" and whenever, as he further observes, as is the case in most instances, it is of no sort of use to the party himself to have a charge upon his own estate, it will be held to sink, unless something shall have been done to keep it on foot; yet in the absence of all evidence showing a manifest intention, either the one way or the other, if it appears most for his advantage to keep the charge alive, it will be presumed that he intended it should be so. This doctrine is sustained by the case of *Dougherty* v. *Jack*, (5 *Watts*, 457-8.) Then seeing there is no evidence here of any avowed or declared intention by Daniel Man, when he purchased the equity of redemption, and thus became the owner of both the legal and equitable estate, that he wished to keep the mortgage assigned to him by Jones, on foot thereafter, it becomes proper to examine and see whether it was indifferent to him, or was not for his advantage that the mortgage should be kept on foot. It will soon be seen it was not a matter of indifference to him ; for having bought the equity of redemption, subject to the mortgage of the plaintiff in error, which was posterior to his own, he could only protect himself in the enjoyment of the land under his own mortgage, by keeping it alive until he should· be paid the amount of it. Unless he kept his mortgage on foot after he became the owner of the land by the purchase of the equity of redemption, he permitted the mortgage of the plaintiff in error to become the oldest incumbrance, and consequently could not claim to hold or enjoy the land without paying it off. And for aught that could be foreseen, something might have occurred thereafter to cause a great depression in the value of the land, so as to reduce it to a sum of money not exceeding the amount in his mortgage : in such event, by keeping his mortgage alive, he would be enabled either to receive the amount of his mortgage, or otherwise to become the absolute owner of the land, discharged from all incumbrances, without paying any more money for it. But if his mortgage were to be considered as extinguished by his purchase of the equity of redemption, it is perfectly obvious that in the event of such depression in the value of the land, as has just been mentioned, he would lose the amount of the money mentioned in his mortgage, and the land too, unless he should choose to pay the mortgage of the plaintiff in error. It being thus seen to be for the advantage of the defendant in error, that his mortgage should be kept on foot, we must therefore presume that he intended it to be so. Upon such presumed intention, it was held in the case of *Forbes* v. *Moffat*, (18 *Ves.* 385,) that a mortgage, to answer it, and to benefit the personal representatives, was not extinguished by its being purchased by a person who had acquired the equity of redemption.

We come now to the third question;—Did the deed of conveyance from Daniel Man to Margaret Helmbold, discharge the lien of

his mortgage upon the land, or show that he did not intend to keep it alive, when he became the owner of the land ; or estop him from claiming under it ?   His conveyance to Margaret Helmbold might probably have operated in either of those ways, or at least in either of the two first, were it not for the parol evidence which has been already noticed.   From this evidence it would appear, that it was not intended to operate as a discharge ; nor to be taken as evidence, that he had at any time intended not to keep the mortgage on foot ; or that he intended then to relinquish it.   But this evidence, on the contrary, going to show that it was the understanding of the parties that the mortgage assigned by Jones to Man should be kept on foot, we can perceive no good reason why it should be considered extinguished, contrary to the express intention in this respect; or why Man should be estopped from claiming under it against the plaintiff in error, who is neither party nor privy to the deed from Man to Margaret Helmbold.   It is only by and between parties to a deed, or those claiming under them, that an estoppel can be set up, or any advantage derived therefrom ; and the plaintiff in error not being a party to this deed, or claiming under it in any way, is not bound, and cannot be estopped by it, and is therefore not entitled to claim any advantage from it, upon the ground of estoppel.

It only remains now to notice the last question ;—Did the lien of the mortgage of the defendant in error expire, because the judgment in the *scire facias* thereon was not revived within five years thereafter, as liens arising from judgments are required to be, by the acts of assembly passed in that behalf, in order to continue them beyond that period ?   The judgment obtained in the *scire facias,* sued out upon the mortgage here, created no lien whatever upon the land. The lien was created by the mortgage itself; the judgment neither added to, nor took any thing from it ; it is clear, therefore, that the acts of assembly, which require judgments creating liens or binding lands or real estate, to be revived every period of five years, for the purpose of continuing such liens, do not extend to or embrace the liens of mortgages, and can have no application to or bearing upon them whatever.   The lien of the mortgage, therefore, continued to exist in the present case as if no *scire facias* had been sued out and judgment obtained in it.   The only effect of a judgment in such case, is to give the mortgagee an execution immediately, if he chooses, against the land mortgaged, and nothing else, that he may levy the amount of his debt out of it, by a sale thereof.   The *scire facias,* will also, if sued out within twenty years after the mortgage money shall have become payable, prevent the presumption of payment from arising, which without it would arise, unless repelled by other circumstances.   The judgment is affirmed.

Judgment affirmed.