## Wallace *versus* Blair *et al.*

1. A republication of a will may be proved by parol.

2. A testator's declaration that his will was in a box in his study, amounted to a new publication.

3. An omission to serve a *sci. fa. sur* mortgage upon the heirs of a deceased mortgagor, does not avoid the sale; but such omission will let the heirs in on the trial in ejectment, to make any defence they might have made on the *sci. fa.*

4. As a merger is for the benefit of him in whom the two interests unite, it will never take place when it is against his interest, or when it is most for his advantage to keep the charge alive.

5. When one of the mortgagees purchased the mortgaged estate on a judgment entered after the mortgage, the two interests or estates do not merge, and the mortgage is not extinguished.

ERROR to the Court of Common Pleas of *Westmoreland county*.

Ejectment for a tract of land in Salem township, containing three hundred acres, more or less.

Matthew Jack and William Jack were the owners of the land in dispute, as tenants in common. On the 27th October, 1837, they conveyed the land in dispute to Andrew Stormont. On the 7th March, 1838, Stormont executed a mortgage to Matthew and William Jack, for the payment of eight bonds, for $500 each, and one for $391.14, being the balance of purchase-money, which was recorded 9th March, 1838.

On the 16th April, 1838, Matthew Jack obtained judgment against Stormont for $1000, his own private debt, and no part of the purchase-money of the land. On this judgment the mortgagor's premises were levied, and sold to Matthew Jack for

$1560, and he got the sheriff's deed in August, 1843 ; and in October following Matthew Jack died, having made his will and testament, by which all his estate was devised to his brother, William Jack, and he was appointed executor. Matthew Jack's will was dated on the 19th September, 1828, and he died 31st October, 1843. The plaintiffs contend that the purchase of the land by Matthew Jack, in May, 1843, at sheriff's sale, being after the date of his will, that the land in dispute did not pass, under any of the clauses therein, to his brother William, but passed, under the intestate laws, to his heirs generally, and that the plaintiffs, as heirs-at-law of Margaret Cust, a sister of Matthew Jack, are entitled to recover the one-third of the land in dispute.

The defendant contends that Matthew Jack, after the land in controversy was purchased by him at sheriff's sale, in 1843, and a short time before he died, republished his will by parol, by virtue of which republication all the lands he then owned, including the land in dispute, passed to William Jack, under whom he claims. The evidence of which was rejected by the court, and exception taken by defendant.

It is also contended by the defendant, that even if the parol republication will not operate, to vest in William Jack a good title under the will, that by his purchase under the judgment on the mortgage, the interest of Matthew Jack, and those claiming under him, was cancelled, and was vested in William Jack, the purchaser, independent of the will altogether ;—that when Matthew Jack purchased at sheriff's sale, in 1843, on a judgment younger than the mortgage, (there being no liens prior to the mortgage,) he took it subject to the mortgage, and that William Jack, the surviving mortgagee, had a right to proceed on the mortgage, and extinguish in that way, as well the title of the mortgagor as of Matthew Jack, who purchased subject to the mortgage.

The plaintiff's counsel requested the court to charge as follows :

" 1. That the purchase by the testator, Matthew Jack, of the equity of redemption of Andrew Stormont, in the lands in controversy, upon an execution issued on his own judgment, operates as a merger, or extinguishment of the mortgage in favor of himself and his brother William, making him the debtor of his brother for the amount of his share.

" 2. That if the mortgage referred to was not extinguished by the purchase, as to the interest of William therein, it was at all events a charge upon the estate, which William, as the executor of Matthew, was bound to remove for the benefit of the heirs ;—that if he had not sufficient personal assets for that purpose, it was his duty to apply to the Orphans' Court for authority to sell a portion of the lands ; and that, having entered upon the

land after the death of Matthew, claiming under him as devisee, or as one of the heirs, the sale made by himself upon a judgment, recovered upon the mortgage for the whole amount thereof, without notice to his co-heirs, would vest no title in him to the exclusion of the said co-heirs."

The defendant's counsel requested the judge to charge the jury:

"1. That the sale by the sheriff of the property in dispute, to Matthew Jack, in 1843, did not divest the lien of the mortgage to Matthew Jack and William Jack, of March 7, 1838.

"2. That the sale by the sheriff to William Jack, in 1850, vested in him a valid title, unimpeachable by Matthew Jack or any persons claiming under him.

"3. That the title acquired by William Jack by sheriff's deed, in 1850, is conclusive against the plaintiffs in this action.

"4. That under the will of Matthew Jack, William Jack became the absolute owner of the mortgage made by Andrew Stormont, and the proceeding thereon, although in the joint names of the said Matthew and William, would enure to the benefit of the latter alone; and as the plaintiffs had no interest therein, William Jack did not act as their trustee in the purchase of the property."

The court, BURRILL, P., charged the jury as follows:—

"The plaintiffs—children of a sister of Matthew Jack, deceased—seek to recover the one-third of the land described in the writ, on the ground that it was acquired by the deceased after making his will, and therefore did not pass to his devisee.

"It appears that Matthew and William Jack owned the land, holding as tenants in common, and that on the 27th October, 1837, they conveyed to Andrew Stormont; that on the 7th March, 1838, Stormont executed a mortgage to them, recorded 9th March, 1838, to secure the unpaid purchase-money; that on the 16th April, 1838, Matthew Jack, one of the mortgagees, obtained a judgment against Stormont, in which a *scire facias* was issued in 1843—judgment obtained, and process of execution had, by virtue of which this same land was levied on, and sold by the sheriff to Matthew Jack, the proceeds of which sale were appropriated to that and other judgments.

"Things stood in this position at the death of Matthew Jack, on 31st October, 1843. His will was proved, and found to bear date the 19th September, 1828, long prior to this acquisition of title by the sheriff's sale. William Jack was the devisee of his real estate; but, according to the opinion of the Supreme Court in *Shoenberger* v. *Jack*, the title did not pass to him under this will, the land having been acquired since the date of the will, and parol evidence being inadmissible to change the result.

"William Jack, under whom the defendant, Wallace, holds,

[Wallace *v.* Blair et al.]

was both executor and devisee of Matthew Jack, and took possession of this land after the testator's death. Having been his co-mortgagee, he issued a *scire facias* as survivor, to February Term, 1850, on the Stormont mortgage, obtained judgment, issued a *levari facias*, and on the 6th May, 1850, the land was sold to himself, William Jack, under whom Wallace claims.

" We answer the plaintiff's first point in the negative, and defendants' first point affirmatively.

" We do not think it a case of merger. Whatever might have been held in case William had joined with Matthew in the purchase at sheriff's sale, it seems plain that a purchase of the interest of the mortgagor, by one of two mortgagees, the sale not divesting the lien of the mortgage, could not impair or affect the security, at least as to the other mortgagee ; and if the mortgage was not merged as a whole, it was not merged in part. We think the lien of the mortgage remained undivested at the death of Matthew Jack, and that, it being merely a security for money, he died seised of this land, and as it did not pass by his will, one undivided third part of it descended to the plaintiffs, subject of course to the incumbrance of the mortgage.

" The defendant's counsel contend that William Jack, by the sale of this land to himself, in the proceedings on the mortgage, divested the title of Matthew Jack's heirs-at-law.

" On this subject we have the defendant's 2d, 3d, and 4th points, all which we answer in the negative ; and the plaintiff's 2d point we answer affirmatively.

" We are of opinion that William Jack, being not only surviving mortgagee, but also Matthew Jack's devisee and executor, could not proceed on the mortgage, and acquire a valid title by purchasing the land, without any notice to his co-heirs and co-tenants in common ; that he should, as executor, have paid off the encumbrance, or by proper proceedings in the Orphans' Court, have compelled the heirs-at-law to contribute in just proportion to the payment of this encumbrance on his real estate.

" If the sale to him be not wholly void, we think he should be held a trustee for the other heirs, as to their interest in the land.

" On the principles, therefore, indicated in the plaintiffs' second point, the jury is instructed that their verdict should be for the plaintiffs."

The verdict and judgment were for the plaintiffs, for one-third of the land in dispute.

The errors assigned were :

The rejection of the evidence offered to prove the parol republication of the will of Matthew Jack.

In answering defendant's 2d, 3d, and 4th points in the negative, and plaintiffs' 2d point in the affirmative ; and the charge of the court.

*Foster* and *Stokes*, for plaintiff in error, referred to *Meason's Estate*, 1 Par. 129; 1 Ves. 189; 1 Viner, 36; 2 P. Wms. 222; 1 P. Wms. 347; 2 Whis. Chan. 229; 9 S. & R. 71; *Matthew* v. *Clark*, 1 W. 491.

*Cowan* and *Williams*, for defendants in error, referred to *James* v. *Mooney*, 2 Cow. 246; 6 Johns. Ch. R. 426; *Van Horne* v. *Fonda*, 5 Johns. Ch. R. 388; 3 S. & R. 381; 9 W. & S. 197.

The opinion of the court was delivered by

LEWIS, J.—The 6th section of the Act of 1705 does not differ from the 13th section of the Act of 8th April, 1833, in any matter material to the question of republication. The commissioners on the civil code, in reporting the latter, speak of it as nearly a literal transcript "from the former, excepting the correction of a mistake, not material to the present question." 2 Park & Johns. 876. The Act of 1705 contains the words, "repealed, altered or changed;" the Act of 1833 uses the words, "repealed or altered." The omission of the word "changed" was proper, because it was but a repetition of the idea expressed by the word "altered." So that the material words in both statutes are precisely the same, and the re-enactment of them must be understood as a legislative enactment of the construction which they had previously received by the solemn adjudications of the courts. What was that construction? It was that these words referred to an alteration or revocation of the body of the will, and not to such acts as brought other subjects within its operation without, in any respect, altering or repealing the instrument itself. Hence it was decided, in 1810, that these words did not prevent the proof, by parol evidence, of the republication of a will. *Havard* v. *Davis*, 2 Bin. 406. The same point was ruled in 3 Wash. C. C. 481. In *Jones* v. *Hartley*, 2 Wharton, 103, the case in 2 Bin. 406, was cited by the court as authority, and it was emphatically declared, that "it must be considered as settled, that parol evidence of republication of a will is proper in Pennsylvania," and that "it is not an open question now." In *Campbell* v. *Jameson*, 8 Barr, 499, the same principle was re-affirmed, and it was added that there was nothing in the Act of 1833 to interdict such republication by parol. So far from interdicting such evidence, it might have been held that the Act of 1833 was a legislative sanction of the construction which had been given to the same words in the Act of 1705, in relation to the same subject-matter, permitting such evidence to be given. After a doctrine has been thus settled by repeated adjudications, acquiesced in and relied on for nearly a century and a half, and sanctioned by legislative enactment, no court has the right to change it. Judges are not delegated to enact new laws, but to

[Wallace *v.* Blair et al.]

maintain and expound the old ones. *Jus dicere et non jus dare.*
The opinion delivered by the late Chief Justice, when this cause
was here, on a former occasion, was therefore founded upon a
manifest mistake, which, fortunately, it is in our power to cor-
rect in time to prevent its unjust operation, either in this parti-
cular case, or as a precedent in those which may hereafter arise.
I have used the word "republication," because it is the word
most generally adopted, but it does not express, with any sort of
precision, the idea intended.   Chief Justice Gibbs, in *Mordie* v.
*Read*, 7 Taunt. 361, said that "the term publication, in this
sense, was unknown to the law, and that when he called on the
bar to say what publication was, he did not wonder that he re-
ceived no answer.   He did not know what the publication of a
will was.   He could only suppose it to be that by which a per-
son designated that he means to give effect to a paper as his
will." Ib.   The testator's declaration, that his will was in a box
in his study, amounted to a new publication.   *Colton* v. *Colton*,
2 Vern. 209.   So his refusal to sell an after-purchased tract,
saying, that he "had made his will and settled his estate, and
intended that his wife should have his whole estate," was held a
new publication, so as to pass the after-purchased lands.   S. C.,
Freeman, 264.   It is scarcely necessary to say that these re-
marks are intended to apply exclusively to the case before us.
If the republication of the will be governed by the law in force
when the instrument was originally executed, they must be con-
ceded on all hands to be in accordance with the undoubted law
of the case.   If, on the contrary, the will be governed by the Act
of 1833, they are unnecessary, for under the provisions of that
act, parol evidence of republication can never be received for the
purpose of fixing the operation of the will upon subsequent ac-
quisitions.

But if the republication of the will should not be established
to the satisfaction of the jury, it may be necessary to consider
the other points of the cause.   It seems that Matthew and Wil-
liam Jack were originally the owners of the land in dispute, as
tenants in common, and that on the 27th October, 1837, they
conveyed it to Andrew Stormont, who, on the 7th March, 1838,
executed a mortgage to them for the purchase-money.   In Octo-
ber, 1843, Matthew Jack died, his will passing his interest in
this debt to William Jack, if it could at that time be regarded as
personal estate.   In 1850, after judgment on the mortgage, upon
two *nihils* obtained, the premises were sold by the sheriff to Wil-
liam Jack, and the deed has been regularly acknowledged.   It
is objected that this title is void, because the heirs of Matthew
Jack were not served with the *scire facias* upon the mortgage.
But it has been repeatedly decided that the omission to serve the
process upon them does not avoid the sale.   The only effect of

[Wallace v. Blair et al.]

such omission is to let them in, on the the trial of the ejectment to any defence which they might have made to the *scire facias*. *Mather* v. *Clark*, 1 Watts, 491; *Nace* v. *Hollenback*, 1 S. & R. 548; *Blythe* v. *M'Clintic*, 7 S. & R. 341; *Warder* v. *Tainter*, 4 Watts, 270. This brings us to the inquiry, what defence could the other heirs of Matthew Jack have made to the *scire facias*. It appears that soon after Stormont had executed the mortgage to Matthew and William Jack, Matthew obtained a judgment, for his own private debt, against Stormont, levied upon the premises, and purchased them at sheriff's sale, in August, 1843. If this sale had been made to a stranger, it could not be pretended that it extinguished the mortgage; that being the oldest lien, the sale on a subsequent judgment is, under the provisions of the act of 1830, a sale subject to the mortgage. But it is thought, that as Matthew Jack was *one* of the mortgagees, his acquisition of the equity of redemption was such an union of both interests in himself as produced a merger of them into one, and this extinguishes the mortgage. As a merger is for the benefit of him in whom the two interests unite, it will never take place when it is against his interest, or where it is most for his advantage to keep the charge alive. *Dougherty* v. *Jack*, 5 Watts, 456; *Helmbold* v. *Man*, 4 Wh. 410. In such a case he may hold the estate, and also a judgment upon it. *Zeigler* v. *Long*, 2 Watts, 205. Or a mortgage and also the equity of redemption. *Moore* v. *The Harrisburg Bank*, 8 Watts, 138. So, if there be a beneficial interest in any other person, there will be no merger. 5 W. 456. In this case, William Jack had not only a beneficial but a legal interest in the mortgage; no merger could take place as to his moiety, without prejudice to his rights. The effect of it would be to convert a specialty into a simple contract, or a lien into a mere personal demand without security. But the indispensable requisite to a merger was wanting, as to his moiety. There was no union of the two interests in one person. It was also against the interest of Matthew that a merger should take place. If his purchase made him *personally* liable for the mortgage debt, it might be otherwise; but, according to the decision in *Hansell* v. *Lutz*, 8 H. 284, the land only is bound for it. He had, therefore, a right, after appropriating the value of the land to the payment of the mortgage, to resort to the mortgagor for the residue of the debt. He had always, as one of the two joint mortgagees, a right to keep the charge on foot for the purpose of taking his chance of survivorship, by which he might acquire a legal right to the whole. In addition to this, the mortgage was not due, and it is to be presumed to be against the interests of a creditor to compel him to accept satisfaction of his demand before the time fixed by the contract for its payment; a

VOL. I.—6

merger would deprive him of all these advantages, and therefore the law will not thus extinguish the mortgage without his consent.

But it is alleged that William Jack was a tenant in common with the other heirs of Matthew Jack, and had therefore no right to purchase the estate except for the common benefit. He was a joint owner with Matthew Jack of the mortgage debt, but the latter died in the exclusive occupancy of the land. When William entered, he claimed not as holding in common with the other heirs of Matthew Jack, but as claiming the whole, under the republication of the will, by which the whole was devised to him. Whatever may be said about the legal rights of the other heirs to hold in common, it cannot be said with any propriety that they at any time actually did hold the land in common with William. The mortgage debt was personal estate, and upon the death of Matthew became vested exclusively in William. As it was contracted by Stormont, and not by Matthew Jack, the latter was not personally bound for it, and his executor (William Jack) was therefore under no obligation to apply the personal estate bequeathed to him in satisfaction of it, in order to relieve the land from the charge for the benefit of the other heirs. There was, therefore, nothing in William's relation to the other heirs which precluded him from purchasing the property at the sheriff's sale upon his own mortgage. And as there was nothing in evidence which would have availed the plaintiff below, if offered on the trial of the *scire facias* on the mortgage, the court ought to have negatived their points and affirmed those of the defendant below. All the errors assigned have been maintained, and the judgment is to be reversed.

Judgment reversed, and *venire facias de novo* awarded.

BLACK, C. J., and LOWRIE, J., dissented.