## Kunkle *against* Wolfersberger.

A deed, in its form a conveyance, may be shown to be a mortgage by extrinsic proof, while a formal mortgage may not be shown to be a conditional sale by the same means.

Between the grantor and grantee, the admissions of the latter respecting his title, are competent evidence in an ejectment against a third person, to whom the grantee had sold, if made while he was the owner.

What was intended to be security for a loan, shall not become a conditional sale by the accidental form of the transaction; and an agreement to make it such, in default of payment at the day, will be relieved against.

The relation of landlord and tenant is not inconsistent with that of mortgagor and mortgagee; hence, the character of a mortgage will not be changed to that of a conveyance by the acceptance of a lease by the mortgagor from the mortgagee, containing a stipulation for the payment of a rent equivalent to the interest upon the debt secured by the mortgage.

ERROR to *Dauphin* county.

This was an action of ejectment by Philip Wolfersberger against Benjamin Kunkle, Abraham M'Neal, and Francis Laur, to recover a house and lot in Portsmouth. Each party claimed under the same original title admitted to have been in Henry Smith.

The plaintiff gave in evidence a deed from Henry Smith to Michael Albright, dated the 6th of August 1833, for the consideration of 400 dollars, a judgment of Philip Wolfersberger against Michael Albright, entered the 6th of April 1835, upon which executions were issued, and the property sold to the plaintiff, who received the sheriff's deed therefor, on the 16th of November 1835.

The defendants then gave in evidence a deed from Michael Albright to Benjamin Kunkle, one of the defendants, dated the 7th of August 1833, in consideration of 400 dollars. And a lease from Benjamin Kunkle to Michael Albright, of the premises, dated the 13th of February 1835, in consideration of the annual rent of 24 dollars, and "the lessee to pay all taxes and all repairs made and to be made." He then gave in evidence a notice signed Benjamin Kunkle, which was given at the time the property was sold by the sheriff to the plaintiff, that the property belonged to him: and a deed from him to his co-defendant Abraham M'Neal, dated the 1st of December 1835, consideration 850 dollars.

Plaintiff, then further to maintain the issue on his part, called William Kline, Esq., and offered to prove, that he tendered to Benjamin Kunkle, before the commencement of this suit 435 dollars, as amount due to him by Michael Albright, and to follow this with proof, that the deed from Albright to Kunkle, given in evidence by the defendants, was made to secure the payment of that sum, and was merely a mortgage; to the admission of which evidence, defendants' counsel then and there objected, that the

[Kunkle v. Wolfersberger.]

evidence of the tender was irrelevant at this stage of the cause, which objections the court overruled, and admitted the evidence to be given, to which admissions defendants' counsel excepted. The witness gave the evidence of the tender to both Kunkle and M'Neal.

The plaintiff then further offered to prove the declarations of Benjamin Kunkle, made about the time of the execution of the deed from Albright to Kunkle, that he advanced for Albright 400 dollars, to buy the lot in question, and that Albright was to pay him the interest of it, that he said he had not taken a judgment to secure it, but had taken a deed for the lot for that purpose, which was better, for the purpose of showing that the deed from Albright to Kunkle is nothing more than a mortgage, to secure the payment of 400 dollars. Also, declarations of Kunkle made in 1835, to same effect and for same purpose. To the admission of which evidence, defendants' counsel objected that it was irrelevant, that it is in direct contradiction of the deed, that here there is no fraud alleged, or mistake in the scrivener at the execution of the deed, and that the declaration proposed to be proved, were subsequent to the date of the deed, that the declarations of the grantor cannot be given in evidence to affect M'Neal, the vendor, a *bona fide* purchaser without notice, that it is setting up a parol contract in opposition to the written contract; that here no trust is alleged or offered to be proved, and that the declarations offered to be proved, are before the date of the lease given in evidence, and also go to contradict it. Which objections the court overruled and admitted the evidence; to which admission and evidence, defendants' counsel excepted. Several witnesses were examined, who proved the facts offered in evidence, and the declarations of Kunkle made previously to the time he conveyed to M'Neal.

Plaintiff, further to maintain an issue on his part, offered as *pro ut* offer, " B."—" That at, or about the time that the deed from Kunkle to M'Neal was executed, the fact of the creditors of Michael Albright having proceeded against the property, and Philip Wolfersberger, the plaintiff, having purchased Albright's interest at sheriff's sale, was mentioned in the presence of M'Neal, and was known to him before he bought, and that Kunkle was to see him safe, and he was not to pay the 450 dollars if the property was recovered from him; to show that M'Neal is not a *bona fide* purchaser without notice." To the admission of which evidence, defendants' counsel objected that it was irrelevant, and not competent; and if intended to make out notice to M'Neal by declarations of Kunkle in his absence, it is incompetent evidence for that purpose; which objections the court overruled, and admitted the evidence, to which admission and evidence, defendants' counsel excepted.

It appeared in evidence, that M'Neal had paid 400 dollars of

the purchase money to Kunkle, and the residue 450 dollars remained unpaid.

The court below (Blythe, president) charged the jury on the only material points in the cause, as follows: .

" Whether it was a purchase by Kunkle, with a view to acquire the property, but on an agreement, that if at the end of a year from the date of the purchase, Albright should be able to buy the lot, Kunkle would sell it to him for the same price he had paid, or whether the real transaction was a loan of 400 dollars by Kunkle to Albright, and the deed for the lot was made solely with a view to secure the repayment of the 400 dollars and its interest, are questions of fact, exclusively for the decision of the jury. If Kunkle bought with a view of acquiring the property, but on condition that he would allow Albright to repurchase at the end of a year from date of deed to Kunkle, in that event, Albright's right of repurchase would become extinct at the end of the year, and Kunkle would hold the lot, discharged from any claim of Albright's. But if the transaction was in reality a loan of money by Kunkle to Albright, and the deed was made to Kunkle by Albright, solely with a view to secure the repayment of the money and its interest, in that event, the deed though absolute on its face, was neither more nor less than a mortgage, *and any agreement that if the money should not be paid at a subsequent day, then the property should absolutely belong to Kunkle, would not prevent Albright from claiming the property after the time fixed for payment should have elapsed, upon paying the debt and interest.* If the transaction was in reality a mortgage, no agreement, that if the money should not be paid at a subsequent day fixed, the property should belong absolutely to Kunkle, would destroy or take away Albright's right to redeem the property, after the day fixed for payment, by payment of the debt and interest. Albright's right of redemption, if it was a mortgage, could only be destroyed by Kunkle by a foreclosure; that is, by suing out a *scire facias,* and selling the property by the sheriff. But though Albright's right of redemption, if the transaction was a mortgage, could not be taken away, except by his own consent, unless by *scire facias* and sale by sheriff, yet Albright might release his right of redemption. The equity of redemption is an interest in land, which is within the provisions of the act of assembly, which prohibits sale of lands by parol. But it is alleged by defendants, that Albright, by accepting the lease from Kunkle of the 13th of February 1835, relinquished all claim to the lot, if any claim he had, up to that time. The plaintiff alleges, that the lease was merely a mode of receiving the payment of the interest, on the 400 dollars advanced to Albright by Kunkle. The lease on its face, and by its terms, is an acknowledgement of Kunkle's right to the land, yet it is not conclusive of Albright's right. If it was only a mode of receiving the payment

[Kunkle v. Wolfersberger.]

of the interest, on the 400 dollars due Kunkle, Albright's right of redemption, would remain as perfect after the lease, as before it. He would not be stopped by the lease from redeeming. But the lease is evidence, from which the jury may infer, that Albright had relinquished his right of redemption, and if the jury should draw that inference, then the interest of Albright was extinct, and there would remain in him no interest, on which the judgment of Wolfersberger could attach, and plaintiff could acquire no right by the sheriff's sale upon that judgment. But if Albright had the right of redemption, and the lease was only a mode of receiving payment of the interest on the money secured by the mortgage, his equity of redemption remained in him after the lease, and the judgment against him in favour of plaintiff, would bind that interest, and the sale by the sheriff on that judgment to plaintiff, would vest in plaintiff that equity of redemption, and plaintiff would have a right to redeem, upon paying the debt and interest to Kunkle, or to M'Neal, after sale to him by Kunkle."

" But it is said, M'Neal is a *bona fide* purchaser for valuable consideration, without notice of this equity in Albright or Wolfersberger. On the other hand, it is said, the possession of Albright, and purchase of his interest by plaintiff, was notice to M'Neal. There was nothing in the possession of Albright, or purchase by plaintiff, by which M'Neal could be affected with notice of an equitable interest in Albright and plaintiff. But M'Neal had notice of that equitable interest, on the 29th of December 1835, when the tender was made to him by plaintiff, and by the commencement of this suit. How far was M'Neal liable to be affected by notice of this equity, if it existed on the 29th of December 1835? M'Neal had not paid Kunkle all the purchase money. He has not yet paid it. There remains 450 dollars yet due Kunkle. The owner of the equitable interest, has a right to have his equity enforced against the owner of the legal title, who bought without notice of the equity, provided the owner of the equity gives notice of it before the owner of the legal title has paid all his purchase money; upon paying him the purchase money he has actually paid, that is, upon reimbursing him what he has actually expended before receiving notice of the equity. In this case, notice of the equity having been given to M'Neal before he paid all the purchase money, plaintiff had a right to insist upon his equity, on his making M'Neal whole in regard of his expenditures, in the purchase of the legal title, before he had notice of the equity, and upon plaintiff tendering the amount M'Neal, had actually expended before notice, he was entitled to possession of the lot, if you find the equity to have existed, and on refusal of M'Neal to give possession, it may be recovered by ejectment. But in addition to the 400 dollars and interest, which M'Neal paid Kunkle, it is said he expended considerable sums in the purchase of stuff, to improve on the lot, before he received notice of its equity. About this, I had some

[Kunkle v. Wolfersberger.]

doubt. The general rule is, that the owner of the equity must tender to the owner of the legal title, whatever he is entitled to, before institution of the suit. But in this case, Wolfersberger had no means of knowing of this claim, for purchase of stuff for building. Had the improvements been placed on the lot, plaintiff might have been obliged to notice them, and tender their value before instituting suit. M'Neal, when the tender was made to him, did not disclose this claim, but denied plaintiff's equity. Shall M'Neal, for that reason, forfeit his claim to be reimbursed these expenses, which he innocently incurred? I think the proper course is, to recognize the equities of the parties, when declared according to their merits, notwithstanding the difficulty of enforcing them through common law forms. It can be done now, by requiring plaintiff to pay M'Neal the expenses he incurred in purchasing stuff, in addition to the 435 dollars tendered, should you find for plaintiff. Should you find for plaintiff, it should be on condition he pay 'M'Neal the sum tendered, and value of what he expended for stuff before receiving notice of plaintiff's claim."

*J. A. Fisher*, for plaintiff in error, cited 5 *Serg. & Rawle* 425; 16 *Serg. & Rawle* 424; 14 *Serg. & Rawle* 295; 7 *Serg. & Rawle* 111; 1 *Rawle* 325; 3 *Penns. Rep.* 239; 13 *Mass.* 446; 8 *Serg. & Rawle* 484; 1 *Rawle* 408; 2 *Watts* 325; 5 *Watts* 391; 2 *Bridg. Eq. Dig.*, Mortgage 2, p. 323; 17 *Vez.* 369; 14 *Vez.* 606.

*M'Cormick*, for defendant in error, cited 4 *Kent's Com.* 141; 2 *Freem.* 268, 285; 5 *Binn.* 499; 1 *Dall.* 426; 1 *Penns. Blac.* 427; 4 *Johns. Ch.* 167; 6 *Johns. Ch.* 417; 15 *Johns. Rep.* 555; 1 *Johns. Ch.* 594; 7 *Johns. Ch.* 40; 1 *Yeates* 579; 9 *Serg. & Rawle* 434; 4 *Johns. Ch.* 167; 2 *Cruise's Dig.* 65, *No.* 21; 13 *Mass.* 309; *Sug. Vend.* 530; 4 *Kent's Com.* 162.

The opinion of the Court was delivered by

GIBSON, C. J.—A formal conveyance may certainly be shown to be a mortgage by extrinsic proof, while a formal mortgage may not be shown to be a conditional sale by the same means. In the one case, the proof raises an equity consistent with the writing, and in the other would contradict it; which seems to be the principle of Woods *v.* Colwell, 3 *Watts* 188. Was the quality of the evidence unexceptionable in other respects? Betwixt the grantor and the grantee, the admissions of the latter would be clearly competent; and though the offer was not restricted to admissions before the latter had conveyed to his co-defendant, none else were actually given to the jury. But the admissions were those of a party of record, and therefore, unexceptionable in any view. As to the proof of knowledge before the co-defendant had purchased, it is sufficient to say, it was not pretended that he has paid the entire purchase money; so that the error, if there were one, was in an

[Kunkle v. Wolfersberger.]

immaterial part of the inquiry. But proof of an agreement to indemnify the co-defendant against disturbance from this particular quarter, would be proof of notice by one competent to give it. The exceptions to evidence were, therefore, properly overruled.

The exceptions to the charge are like those that preceded them. It is too late to say that what was intended to be security for a loan, may become a conditional sale by the accidental form of the transaction; or that an agreement to make it such in default of payment at the day, shall not be relieved against; or that the jury are not the proper judges of the intention, or that a purchaser with a part of the purchase money in his hands, may be protected beyond reimbursement. These are elementary matters not open to discussion. The only original thing in the cause, and it is not of difficult solution, is the effect of the lease from one of the defendants to the grantor, under whose title the plaintiff claims, which is said to be a decisive circumstance, either to rebut the alleged mortgage originally, or to dissolve the relation created by it, if it ever existed; and that it is matter of law for the court. But why should the relation of landlord and tenant be thought inconsistent with that of mortgagor and mortgagee? Without it, a mortgagor is an occupant liable to be turned out at a moment's warning; and it is hard to imagine why a stipulation for a term certain, at a rent equivalent to the interest, may not be reconciled to the intention of the principal contract. So far as interpretation was concerned, the court was the arbiter, and had there been a question about the nature or extent of the covenants, it must have decided it; but the object of the arrangement and the indications to be answered by it, were extrinsic, and for the jury. Nothing presented by this multifarious assignment of error, calls for correction.

Judgment affirmed.