## Bartholomew v. Langan.

*Mortgage—Seal—Validity of mortgage not sealed—Judgment—Collateral attack on judgment.*

1. A valid mortgage may be created by a written instrument not under seal.

2. Where, in a written obligation not under seal, the parties designate *scire facias* as the remedy for breach, and this remedy is pursued, no one can assert that the instrument is invalid because not under seal.

3. Where a judgment has been secured on the *scire facias*, and such judgment is regular on its face, no one thereafter can allege in a collateral proceeding that the judgment was invalid.

*Executors and administrators—Judgment—Bringing in devisees—Parties —Act of Feb. 24, 1834.*

4. The Act of Feb. 24, 1834, P. L. 70, 80, providing for the bringing in of devisees of the testator in suits against an executor, does not, apply to a lien, either general or special, created by the decedent or recorded against him in his lifetime.

*Sheriff's sales—What interest purchaser takes.*

5. A purchaser at sheriff's sale takes only the interest of the defendant named in the writ.

*Mortgage—Scire facias—Parties—Securities—Devisees—Act of Jan. 12, 1705.*

6. Under the Act of Jan. 12, 1705, 1 Sm. Laws, 57, 59, a *scire facias sur* mortgage must issue against the mortgagor, his heirs, executors or administrators; if the deceased mortgagor appointed an executor, the judgment can only be taken against him, although it serves to bind the devisees.

Case stated in *assumpsit* for purchase money.  C. P. Lackawanna Co., Nov. T., 1924, No. 831.

*J. M. Walker,* for plaintiffs; *J. J. Powell,* for defendant.

NEWCOMB, J., Nov. 15, 1924.—The ultimate question is whether plaintiffs' title to certain lands of which Nettie Stuart died seized in fee is such as defendant is bound to accept; and it is believed to be free from difficulty.

After her death, Mrs. Stuart's mortgage was foreclosed by process of *scire facias* against her executors. The suit went to judgment in due form of law. The judgment was thereafter put in execution on a *levari facias;* the mortgaged premises were thereupon seized and sold by the sheriff; Mr. Kasson became the purchaser; the sheriff's deed was duly acknowledged without objection; and eventually plaintiffs succeeded to Kasson's title. Hence, the single question upon which the case now turns is whether the foreclosure sale was effective to transfer the title of Mrs. Stuart.

It is contended that the *sci. fa.*, judgment and sale were abortive, as the proceeding was founded on an invalid mortgage because that had not been sealed.

While sealing may be essential to the technical definition of a mortgage, it has been held that a valid mortgage may be created by a written instrument not under seal: Woods *v.* Wallace, 22 Pa. 171.

Whether so or not is of no importance here—if for no other reason— because the creditor pursued the very remedy expressly provided for by the parties in terms of their writing which they had seen fit to denominate a mortgage.

But there is another and, if possible, a more conclusive reason inherent in the record.

Bartholomew *v.* Langan.

The question now has to do, not with the underlying security, either in matter of form or substance, but with a judgment, regular on its face, of a court of competent jurisdiction.

Such judgment is open to no inquiry in this collateral proceeding, save only for fraud practiced in its procurement, and that is not even suggested. It must stand in full force and effect until either vacated on motion or reversed on appeal; and neither the one nor the other has ever been attempted: Colley *v.* Latimer, 5 S. & R. 211; Hartman *v.* Ogborn, 54 Pa. 120; McDonald *v.* Simcox, 98 Pa. 619; Kennedy *v.* Baker, 159 Pa. 146. The purchaser at the sheriff's sale was not bound to look beyond the judgment: Murray *v.* Weigle, 118 Pa. 159.

It is thus apparent that defendant's objections one and two are without merit. Number three calls in question the effect of the sale on a judgment against the executors without having brought in Mrs. Stuart's devisees.

Counsel has in mind the provision of the Act of Feb. 24, 1834, § 34, P. L. 80. But that does not apply in case of a lien, either general or special, created by the decedent or recovered against her in her lifetime: Shearer *v.* Brinley, 76 Pa. 300; Tryon *v.* Munson, 77 Pa. 250; Middleton *v.* Middleton, 106 Pa. 252; Reece *v.* Haymaker, 164 Pa. 575; Wallace *v.* Blair, 1 Gr. 75; Hiyer *v.* Hayward, 14 Pa. Superior Ct. 56.

Finally, it is said that the purchaser at the sheriff sale took nothing by his deed, as it purported to grant merely "the right, title and interest of" the executors.

Very true; that is all the sheriff ever undertakes to convey, to wit, the interest of the defendant named in his writ. Hence, one is somewhat at a loss to know just what is meant by this objection, unless it reflects counsel's notion that the deed shares in the supposed infirmity of the judgment. That identifies it with objection number three and must, therefore, be regarded as already disposed of. For purposes of execution in such case, decedent's title is deemed to be in her executors by representation.

The proceedings on this mortgage were regulated by the Act of Jan. 12, 1705, § 6, 1 Sm. Laws, 59. That directs service of the *sci. fa.* on "the mortgagor, his heirs, executors or administrators." As between the personal and real representatives of a deceased mortgagor, the terms of the act would appear to leave it to the creditor's option to proceed against either one or the other. But, in practice, suit against the heirs or devisees would seem to have been confined to cases where there was no administration. The writ here was, therefore, properly issued against the executors, because it is so provided by the statute. Hence, judgment could be taken only as against them, though it served to bind the devisees: Tryon *v.* Munson, 77 Pa. 250.

While the *lev. fa.* had to follow the *personnel* of the judgment, it seized and took in execution whatever estate the testatrix had in the land at the inception of the mortgage lien.

In an analogous case it was said: "The writ *(sci. fa.)* must issue against the mortgagor, his heirs, executors or administrators, and its effect, when followed out to a sale, is to extinguish the equity of redemption and to transfer the estate to the purchaser as fully as it existed in the mortgagor at the date of the mortgage. And this transfer, be it observed, is made by the *judgment* and the *sale* thereon, not by virtue of the mortgage. What avails the objection, then, that the mortgage was null and void, or for any reason was inadequate as an invalid instrument of transfer? The inadequacy of the mortgage might well have been urged against the suit by *scire facias,* but after that has been permitted to ripen into an unquestioned judgment, the

Bartholomew v. Langan.

mortgage is merged in it and is no longer open to attack:" Hartman v. Ogborn, 54 Pa. 120.

The title here rests upon a judgment fully executed by judicial sale of the mortgaged premises, consummated more than a quarter of a century ago in due form of law. At this late day it must be regarded as immune from attack, either direct or collateral.

On the facts presented, it is adjudged that the title of Nettie Stuart was divested by the sheriff sale and is now well vested in plaintiffs, who can convey marketable title to their vendee. It follows that they are entitled to recover in this action.

In accordance with the stipulation of counsel, judgment is thereupon entered for plaintiffs in the sum of $500. Exception noted for defendant.

From William A. Wilcox, Scranton, Pa.